UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| ANGELA JACKSON, | ) | |
|---|---|---|
| | ) | |
| Petitioner | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:07-CV-601 RLM |
| | ) | (Arising out of 3:06-CR-32 RLM) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

OPINION AND ORDER

This case fell through the cracks and stayed there. Nothing can excuse the delay in ruling. The court can only offer its apologies to both parties in this case, especially to petitioner Angela Jackson, who should have learned the fate of her petition long ago.

Ms. Jackson was convicted at trial of one count of conspiracy to defraud and six counts of mail fraud. She stood trial with her husband Joe Jackson and her mother-in-law Essie Jackson. The court sentenced her to 15 months' imprisonment. Other facts and procedural events are set forth as needed. A fuller statement of facts can be found in the court of appeals' opinion affirming the convictions of her husband and mother-in-law. United States v. Jackson, 546 F.3d 801 (7th Cir. 2008).

Ms. Jackson is before the court on her petition under 28 U.S.C. § 2255, contending that her trial counsel (Robert Truitt) and her post-trial counsel (Jonathan Minkus) provided ineffective assistance of counsel. The court follows

the government's lead and discusses the claims in chronological order rather than in the order Ms. Jackson used in her petition. She contends Mr. Truitt provided ineffective assistance of counsel by failing to (a) file a pretrial motion to suppress evidence of credit card fraud related to a receipt from Performance Plus that Joe Jackson submitted in support of Ms. Jackson insurance claim for custom rims and tires on her 1999 GMC, and (b) cross-examine government witnesses adequatley. She also asserts ineffective assistance of counsel by Mr. Minkus, who appeared for her before sentencing, for failing to (c) file a motion for a downward departure, (d) ask for a sentence based on the factors set forth in 18 U.S.C. § 3553(a), and (e) file a notice of appeal.

To prove ineffective assistance of counsel, a petitioner must persuade the court that (1) her lawyer made errors, and the errors were so serious that the lawyer can't be said to have been providing the petitioner with the counsel the Constitution guarantees to everyone, and (2) as a result, the petitioner's defense was prejudiced to the point she was deprived of a proceeding with a reliable result. Strickland v. Washington, 466 U.S. 668, 687 (1984). This is no small task. *See* Yu Tian Li v. United States, 648 F.3d 524, 527-528 (7th Cir. 2011) ("To reflect the wide range of competent legal strategies and to avoid the pitfalls of review in hindsight, our review of an attorney's performance is highly deferential and reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.").

A

This prosecution involved an insurance fraud scheme in which Ms. Jackson made insurance claims for damage or loss to three different motor vehicles. One of the vehicles was a 1999 GMC Suburban. That claim included the loss of custom rims and wheels Joe Jackson originally claimed he got from a business called Performance Plus. Mr. Jackson produced a receipt for the custom rims and wheels, and it turned out the purchase had been made with a fraudulent or stolen credit card. Ms. Jackson says Mr. Truitt should have moved to suppress the receipt or object to it at trial; Mr. Truitt did neither.

The grounds on which the receipt might have been suppressed before trial aren't clear; Ms. Jackson offers none. Joe Jackson objected at trial under Federal Rule of Evidence 403 because the jury might think he engaged in credit card fraud. The court overruled that objection because Mr. Jackson had claimed to have purchased the items himself, so the receipt had substantial probative value.

Had Mr. Truitt objected to the receipt at trial on Ms. Jackson's behalf, there's no reason to think the objection would have been sustained. The receipt was slightly less probative with respect to Ms. Jackson (who never stated directly that she bought the rims), but was still probative (this was part of the insurance claim she submitted) and carried considerably less risk of unfair prejudice (there was no suggestion that she ordered the rims). Mr. Truitt explained that he knew he could establish through the Performance Plus witnesses that they had no idea who actually ordered the items, and that Joe Jackson was going to testify that he purchased the rims and wheels from a passing stranger.

Ms. Jackson hasn't shown either that a reasonable attorney would have tried to exclude the receipt or that she was prejudiced in any way by Mr. Truitt's failure to try to exclude the receipt.

B

Ms. Jackson contends Mr. Truitt provided ineffective assistance of counsel by failing to cross-examine a crucial government witness about Fourth of July fireworks. In her third insurance claim, Ms. Jackson reported that she had driven the insured vehicle to Chicago to attend Taste of Chicago and watch the fireworks, and the vehicle was gone when she came back after the fireworks. The government presented the testimony of a postal inspector who was a 34-year Chicago resident and had often attended Taste of Chicago; she testified that the Taste of Chicago fireworks are always held on July 3.

Ms. Jackson is mistaken when she says her trial counsel didn't cross-examine the witness. Mr. Truitt established on the cross-examination that fireworks shows are held in Chicago on July 4, even if not the Taste of Chicago's show. Ms. Jackson doesn't suggest what else a cross-examination could have accomplished, and sometimes the best strategy is to simply get the witness off the stand as quickly as possible. Ms. Jackson also says there were other government witnesses Mr. Truitt should have cross-examined, but she doesn't identify them or specify what should have been done.

Ms. Jackson hasn't shown either that a reasonable attorney would have cross-examined witnesses differently or that she was prejudiced in any way by Mr. Truitt's cross-examinations.

C

After the verdict and before sentencing, Ms. Jackson hired a new lawyer, Mr. Minkus. She complains that at sentencing, Mr. Minkus didn't move for a downward departure and didn't ask the judge to sentence her pursuant to 18 U.S.C. § 3553(a). Ms. Jackson doesn't suggest how her lawyer should have argued differently, and she seems to remember the sentencing hearing imperfectly. After the court resolved the parties' objections, the sentencing guidelines recommended a sentencing range of 12 to 18 months' imprisonment. Mr. Minkus asked for a sentence below the advisory guideline range, asking the court "to consider some sort of split sentence, a period of probation, home confinement, or at the very least the low end of the range." Ms. Jackson doesn't say how she thinks Mr. Minkus could have done better. Mr. Minkus also asked the court to apply the reduction for acceptance of responsibility even though Ms. Jackson had proceeded to trial on a claim of factual innocence.

At the sentencing hearing, Mr. Minkus stressed Ms. Jackson's history and characteristics — she had no prior criminal record, she was very active in her church and her community, and she reached out to people who needed help. Even though her attorney didn't refer specifically to the § 3553(a) factors, the court touched on each one when analyzing the sentencing decision, including each of

5

the points Mr. Minkus made about Ms. Jackson's history and characteristics. Ms. Jackson cites no authority for the proposition that to provide minimally acceptable assistance of counsel, a lawyer must specifically ask the court to apply § 3553(a).

Ms. Jackson has shown neither that Mr. Minkus's performance at the sentencing hearing fell below the constitutional standard or that she was prejudiced in any way by anything Mr. Minkus didn't do.

D

At the end of the sentencing hearing, Ms. Jackson told the court she wanted to appeal, and the court directed Mr. Minkus to file a timely notice of appeal. Seven days later, Ms. Jackson filed her own notice of appeal and petition to proceed in forma pauperis on appeal. Nine days after that, Mr. Minkus filed with the court of appeals a motion to voluntarily dismiss the appeal. Attached to the motion was Ms. Jackson's sworn statement:

> 1) That I filed a Notice of Appeal Pro Se following Sentencing.
> 2) That I have discussed at length with my attorney my rights to an Appeal and issues that I may be able to raise in said Appeal and I desire to withdraw the Notice of Appeal that I filed on my own.
> 3) That my attorney has fully advised me of my constitutional rights to Appeal and that nobody has forced me, threatened me or promised me anything in exchange for my agreement to withdraw my Notice of Appeal and that I do so of my own free will.

The court of appeals granted that motion.

Ms. Jackson and Mr. Minkus agree on why the appeal was dismissed: Ms. Jackson wanted to proceed with post-trial proceedings in the district court

6

because of paperwork from Gates Chevy World that she believed showed that some the evidence against her had been wrong.

Seventeen days after the appeal was dismissed, Mr. Minkus filed a petition under 28 U.S.C. § 2255 that relied on an affidavit from the controller of Gates Chevy World reciting that soon after Ms. Jackson's sentencing hearing, Joe Jackson asked for certain paperwork, which was attached to the affidavit. Mr. Minkus's affidavit is uncontradicted with respect to what happened next:

> On March 20, 2007, I filed a Motion for a New Trial under 28 U.S.C. § 2255 and attached documents in support of the motion that Angela provided me. This evidence consisted of Declarations of William Murray, an unsigned affidavit from Joe Jackson and a receipt from Elmo's Stereo dated October 11, 2002, for $3,280.35. After speaking with Assistant United States Attorney Barbara Brook, I determined that the better avenue for such a motion would be one filed under Rule 33 of the Federal Rules of Criminal Procedure. Ms. Brook also mentioned that the receipt attached to the documents that were filed reflected information and a date different than the exhibit admitted at trial. I advised Angela of the withdrawal of the motion and again requested from her any credible evidence I could review in support of filing a motion for a new trial. I never received any additional information from her.

Mr. Minkus withdrew the § 2255 petition the next day, leaving the ball in Ms. Jackson's court. With the Gates Chevy World record not relevant to the evidence presented at trial, Mr. Minkus had no evidence on which to base a motion for a new trial. And Ms. Jackson produced none.

In sum, Ms. Jackson filed her own notice of appeal before the time for Mr. Minkus to file it had passed. Two days after Joe Jackson got the paperwork from Gates Chevy World, Ms. Jackson, after conferring with Mr. Minkus, voluntarily

dismissed her appeal. Mr. Minkus filed a petition under § 2255 based on the Gates Chevy World paperwork, only to learn that while a Rule 33 motion might be a better to raise an issue of newly discovered evidence, the only newly discovered evidence he had wasn't pertinent to the case. He withdrew the § 2255 petition before the court acted on it (a defendant only gets one § 2255 petition as a matter of right) and told Ms. Jackson he needed something more for him to file a Rule 33 motion. He got nothing else.

An attorney's failure to take an appeal when a defendant requests it generally amounts to ineffective assistance of counsel, <u>Kafo v. United States</u>, 467 F.3d 1063, 1066 (7th Cir. 2006), because the loss of one's appeal rights amounts to prejudice as a matter of law. <u>Castellanos v. United States</u>, 26 F.3d 717, 719-720 (7th Cir.1994). Assuming that proposition of law remains true even if the defendant files her own notice of appeal while the attorney still has time do so, this is one of the rare cases in which the defendant suffered no prejudice from her attorney not filing the notice of appeal. Ms. Jackson had secured her own appeal, and the motion to dismiss the appeal makes clear that Mr. Minkus would have handled the appeal for her.

That Ms. Jackson, rather than Mr. Minkus, filed the notice of appeal didn't harm Ms. Jackson in the slightest. Her appeal was on its way to briefing and resolution. What sidetracked the appeal's progress wasn't a failure by Mr. Minkus to perfect the appeal, but rather Ms. Jackson's decision to dismiss the appeal and place all her eggs in the Gates Chevy World basket. Once the Gates Chevy World

8

paperwork was found to have nothing to do with the evidence presented at Ms. Jackson's trial, there was no basis for a Rule 33 motion for a new trial.

It gives one pause to think Mr. Minkus advised Ms. Jackson to withdraw her appeal, especially if he gave that advice based wholly on Ms. Jackson's description of the Gates Chevy World papers that Joe Jackson had acquired. But Ms. Jackson's petition under § 2255 doesn't claim Mr. Minkus provided ineffective assistance of counsel by advising her to dismiss her appeal, so the court has nothing from Mr. Minkus explaining such advice. He might simply have told Ms. Jackson her options while advising her to do something other than dismiss the appeal, or he might have advised her to dismiss the appeal and proceed directly to the newly discovered evidence in light of the brevity of the sentence, or there might have been another good reason for that course of conduct (the Gates Chevy World paperwork wouldn't be in the appellate record that would ensue from Ms. Jackson's own notice of appeal) — or he might simply have given bad advice (although this record wouldn't support such a finding). In any event, Ms. Jackson dismissed her appeal and put all her chips on the Gates Chevy World paperwork.

It's unfortunate that Ms. Jackson didn't proceed with her appeal. If the appeal by her husband and mother-in-law is any indication, <u>United States v. Jackson</u>, 546 F.3d 801 (7th Cir. 2008), she might not have been any better off, but at least she would have had the chance. But this unusual record can't support a finding that Mr. Minkus failed to honor Ms. Jackson's request to take an appeal and so deprived her of her constitutional right to effective assistance of counsel.

9

For all of the foregoing reasons, the court DENIES Angela Jackson's petition under 28 U.S.C. § 2255 [doc. 161].

ENTERED:   September 16, 2014

　　　　　　　　　　　　　　　　　/s/ Robert L. Miller, Jr.
　　　　　　　　　　　　　　　　Robert L. Miller, Jr., Judge
　　　　　　　　　　　　　　　　United States District Court